UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHERYL FREEZE,

       Plaintiff,

                                    File No. 1:05-CV-413

v.

                                    HON. ROBERT HOLMES BELL

JEFFERSON PILOT FINANCIAL
INSURANCE COMPANY,

       Defendant.
                                          /

## OPINION

This action for long-term disability benefits under an employer-sponsored benefit plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461. Plaintiff, a former employee of Starr Commonwealth, participated in a long-term disability insurance plan provided to Starr Commonwealth employees through Defendant Jefferson Pilot Financial Insurance Company. Plaintiff claims long-term disability benefits under the plan as of August 11, 2002. (AR at 37). Defendant denied Plaintiff's claim for benefits because it determined that Plaintiff's medical records did not support a total disability that rendered Plaintiff incapable of performing the main duties of her occupation. (AR at 433). Before the Court is Plaintiff's motion for judgment on the administrative record. For the following reasons, the motion is denied, and Defendant's decision to deny Plaintiff long-term disability benefits is affirmed.

I.

Between March 1995 and August 2003, Plaintiff was employed by Starr Commonwealth. (AR at 36). During the time period relevant to this case Plaintiff worked as a cottage coordinator. In this capacity, Plaintiff was principally responsible for conducting group and individual counseling, family meetings, coordinating services, and assisting other staff. Pl.'s Br. Mot. Summ. J. at 3; (AR at 38-39). Starr Commonwealth's Position Guide further describes Plaintiff's principal responsibilities as implementing treatment plans for both individuals and groups, participating in screening and intake of potential students, and coordinating home visits, family visits, agency visits, and post-release placement plans. (AR at 38-40). Plaintiff's occupation also appears to have required her to engage in housekeeping tasks, such as laundry, and also required her to occasionally physically restrain students. (AR at 34, 49).

Beginning December 1, 2001, Plaintiff, as an employee of Starr Commonwealth, was eligible to participate in Defendant's long-term disability insurance plan. (AR at 32). According to the policy, "[Defendant] has sole authority to manage this Policy, to administer claims, to interpret Policy provisions, and to resolve questions arising under this Policy." (AR at 11). This authority includes the right to "determine Employees' eligibility for insurance and entitlement to benefits," and to "resolve all matters when a claim review is requested." *Id*. Under the total disability monthly benefit section, the policy states:

> "**Total Disability**" or "**Totally Disabled**" will be defined as follows,
>
> 1. During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the main duties of his or her regular occupation.
>
> 2. After the Own Occupation period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the main duties of any gainful occupation which his or her training, education or experience will reasonably allow.

(AR at 19) (emphasis in original). Defendant must pay a total disability benefit, after the completion of the Elimination Period, if the employee is (1) totally disabled; (2) under the regular care of a Physician; and (3) at the employee's expense, submits proof of continued Total Disability and Physician's care to the Company upon request. (AR at 19).[1]

In her application for long-term disability benefits, Plaintiff claimed that she was unable to work because of chronic back pain caused by two herniated discs. (AR at 32, 37, 49). Plaintiff further explained that her condition was caused by a slip and fall while at work on July 5, 2002. (AR at 49). Plaintiff's attending physician, Javaid Bashir, M.D. ("Dr. Bashir"), diagnosed Plaintiff with "neck and back pain" and indicated that Plaintiff was not able to work. (AR at 37, 60). In addition, Nilesh Kotecha, M.D. ("Dr. Kotecha"), filed a physician's statement in connection with Plaintiff's application for long-term disability benefits indicating a diagnosis of cervical radiculopathy and cervical disc herniation. (AR

---

[1]"Elimination Period" is a defined term under the policy. It means "the number of days of Disability during which no benefit is payable." (AR at 6). The Elimination Period applicable in this case is "90 days of Disability due to the same or a related Sickness or Injury, which must be accumulated within a 180 day period." (AR at 3).

3

at 52). Dr. Kotecha also stated that Plaintiff was restricted from heavy lifting over forty pounds and "excessive over the shoulder work." (AR at 53).

On November 12, 2003, Defendant informed Plaintiff by letter that it was denying her claim for long-term disability benefits. (AR at 176). Defendant explained that:

> [B]ased on the medical information in our possession, no severity existed that would have prevented you from being able to return to your Own Occupation as a Cottage Coordinator by November 9, 2002.
>
> Since your disability did not exceed the Elimination Period, we did not conduct a full investigation regarding your eligibility for disability benefits beyond the end of the Elimination Period. Therefore, you do not meet the above policy provision and no benefits are payable.

(AR at 177). Plaintiff appealed Defendant's decision on November 18, 2003 and submitted additional evidence. (AR at 180). Plaintiff provided records detailing her medical treatment by various physicians from the date of injury, July 5, 2002, to August 20, 2003. (AR at 180-251). On December 26, 2003 Defendant requested additional information in support of the appeal. (AR at 367). Specifically, Defendant requested a copy of an Independent Medical Examination from April 18, 2003, conducted by John L. Zeller, M.D. ("Dr. Zeller"). (AR at 367). Plaintiff complied with the request submitting Dr. Zeller's report as well as additional medical records detailing her treatment from August 20, 2003 to January 2004. (AR at 368-405).

On February 3, 2004, Defendant notified Plaintiff that it was denying her appeal. (AR at 411). Defendant's denial letter stated that it had reviewed all information previously submitted and the additional medical records submitted by Plaintiff, but ultimately concluded

4

that the records failed to show that her condition was severe enough to prevent her from performing her occupation. (AR at 411-12). Defendant specifically relied upon Dr. Zeller's Independent Medical Examination quoting extensively from his report in which he noted that she presented some exaggeration of the severity of her symptoms and did not display any signs of acute injury. (AR at 411). Ultimately Dr. Zeller concluded "there are no objective findings to delineate neurologic deficits and/or neuromuscular dysfunction." (AR at 411). Based upon this evidence Defendant denied the appeal. Thereafter, Plaintiff filed a second appeal and submitted updated medical records. (AR at 413, 423-32).

On October 6, 2004, Defendant denied Plaintiff's final appeal. Defendant reviewed Plaintiff's medical records beginning with an August 25, 2002 MRI showing minimal disc bulge and no signs of degeneration. (AR at 433). Specifically, Defendant relied upon treatment of Plaintiff by David Muzlakovich, M.D. ("Dr. Muzlakovich") between January 2003 and April 2003, noting his initial diagnosis of mid to lower back pain "without signs of radiculopathy" and his prescription of an aggressive physical therapy program. (AR at 434). Defendant also noted that during Dr. Muzlakovich's subsequent treatment he reported improvement in her condition such that Plaintiff was able to begin working on a restricted basis. (AR at 434). Further, Defendant relied upon Dr. Zeller's Independent Medical Examination noting that he reported a normal examination and a final diagnosis of degenerative disc disease not associated with her slip and fall. Defendant also reviewed a May 1, 2003 EMG and May 16, 2003 MRI reporting herniation of intervertebral discs.

5

Finally, Defendant also relied upon medical textbooks discussing the occurrence of degenerative disc disease in patients between 35 and 60 years of age.  Ultimately, Defendant affirmed the prior decision to deny Plaintiff long-term disability benefits concluding that "she has been able to work in the past with accommodations and the medical records do not support a total disability that would render her incapable of performing the main duties of her occupation." (AR at 434).  In response, Plaintiff filed this action.

II.

The parties agree that the long-term disability insurance policy at issue in this case grants Defendant discretionary authority to determine eligibility for benefits and interpret provisions of the policy.  As such, this Court must apply the arbitrary and capricious standard of review to Defendant's decision to deny Plaintiff's claim for long-term disability benefits. *See e.g.*, *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir. 1998).  Under this standard, Defendant's decision is not arbitrary and capricious if it is supported by "a reasoned explanation, based on the evidence."  *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000).  Although this standard is the least demanding form of judicial review, the Court must conduct "some review of the quality and quantity of the medical evidence and the opinions on both sides of the issues." *Moon v. UNUM Provident Corp.*, 405 F.3d 373, 379 (6th Cir. 2005) (quoting *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003)); *Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir. 2004) ("The arbitrary-and-capricious . . . standard does not require us merely to rubber stamp the administrator's

decision."). The Court reviews the administrative determination based only upon those documents that were before the administrator at the time the decision and any appeal was made. *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 615 (6th Cir. 1998).

III.

Plaintiff contends that Defendant's decision was arbitrary and capricious. Plaintiff, however, offers little in the way of support for this argument. She has not directed the Court to any objective medical evidence in the record showing that Defendant's decision was unreasoned or not based upon the evidence. In fact, after reviewing the record, it is clear that Defendant's decision was reasonable and was clearly supported by the evidence. Plaintiff's arguments to the contrary are all without merit.

Plaintiff first points to the fact that in early 2003 she was placed on work restrictions by Dr. Muzlakovich. Plaintiff contends that these restrictions were never lifted and precluded her from engaging in her occupation. This assertion is somewhat disingenuous given the record in this case.

The restrictions to which Plaintiff refers were put in place by Dr. Muzlakovich beginning in February 2003. (AR at 143, 146). Dr. Muzlakovich treated Plaintiff from January to May 2003. On February 4, 2003, Dr. Muzlakovich directed Plaintiff to return to work on a limited, part time basis by February 24, 2003. (AR at 143, 146). During this restricted period, Plaintiff was to work four hours per day, was restricted from engaging in stooping, bending or twisting, and was not permitted to lift over twenty pounds. (AR at 146).

Plaintiff also could not restrain students and needed to work along side a co-worker at all times. (AR at 146). Plaintiff returned to work under these restrictions on February 24, 2003. (AR at 36).

Thereafter, Dr. Muzlakovich continued the work restrictions during March with the expectation that she would increase her workload to full time by April 2003. (AR at 123). Although Dr. Muzlakovich noted some improvement in her condition during March, Plaintiff did not increase her workload in April due to an increase in back pain.[2] (AR at 121, 123, 126).  On April 14, 2003, Dr. Muzlakovich ordered that she "continue working a 4 hour workday and will gradually be increased back to a 9 hour workday."  (AR at 121). Dr. Muzlakovich treated Plaintiff for the final time on May 9, 2003.  He again directed that she remain under her present work restrictions.  (AR at 110).  Despite this recommendation, Plaintiff stopped working on May 16, 2003.  (AR at 36).

As the record reveals, Dr. Muzlakovich's restrictions were not lifted because Plaintiff decided not to continue treating with him and acted directly contrary to his recommendation of continued part time employment.[3]  It also appears that the course of Dr. Muzlakovich's treatment was progressing toward restoring Plaintiff to full time duty.  (AR at 123, 121). Moreover, Dr. Muzlakovich's restrictions do not support Plaintiff's claim of total disability.

---

[2]Dr. Muzlakovich's notes indicate that Plaintiff attributed this increase in pain to "an abrupt discontinuation of her pain medicines."  (AR at 121).

[3]She also apparently rejected his offer of additional physical therapy sessions at no charge. (AR at 110, 278).

8

Plaintiff has identified her principal responsibilities as "conduct[ing] group and/or individual counseling, conduct[ing] family meetings, coordinat[ing] services, and assist[ing] other staff."  Pl.'s Br. at 3 (Docket #12) (AR at 38-40).  Plaintiff has not made any showing that these responsibilities are precluded by any of Dr. Muzlakovich's restrictions.  Consequently, Plaintiff's reliance upon Dr. Muzlakovich's restrictions is misplaced.

Plaintiff's central argument appears to be that Defendant overlooked "objective studies" that set forth pathology that provides a basis for her ongoing complaints.  Further, Plaintiff contends that Defendant placed too much weight on the Independent Medical Examination conducted by Dr. Zeller.  Although Plaintiff broadly alleges that Defendant failed to consider "objective studies" she does not direct the Court to any specific study or portion of the record overlooked by Defendant.  More importantly, Plaintiff's contention that Defendant overlooked objective studies setting forth a basis for her complaints misstates the issue before the Court.  The issue in this case is not whether there is evidence that Plaintiff is suffering from chronic back and neck pain, but rather whether Defendant's decision to deny long-term disability benefits was supported by a reasonable explanation.  *Williams*, 227 F.3d at 712.  There is no dispute that each doctor that treated Plaintiff diagnosed some level of back and neck pain.   (AR at 107-08 (Dr. Hlavac); 110-63 (Dr. Muzlakovich); 373-81 (Dr. Zeller); 60, 65-66 (Dr. Bashir); 52-53, 57 (Dr. Kotecha); 416-22 (Dr. Davis)).  This fact alone, however, does not lead to the conclusion that Plaintiff is therefore unable to perform the main duties of her occupation.  Plaintiff has not pointed to any evidence in the

9

administrative record indicating that she cannot perform the main responsibilities of her occupation as a result of this diagnosis.[4]

In denying Plaintiff long-term disability benefits, Defendant concluded that the medical records did not support a total disability rendering her incapable of performing the main duties of her occupation. (AR at 434). This decision was based upon an accurate interpretation of Plaintiff's medical history and was supported by objective medical evidence from a variety of sources. (AR at 433-34). Defendant specifically relied upon an MRI taken in August 2002, Dr. Muzlakovich's treatment, an EMG/NCV and MRI taken in May 2003, and Dr. Zeller's April 2003 examination. (AR at 434). None of this evidence indicated that Plaintiff was totally disabled. Moreover, as stated previously, Plaintiff has not pointed to any objective evidence reaching a contrary conclusion. This objective medical evidence provided a sufficient basis to support Defendant's decision. Consequently, Defendant's decision was not arbitrary and capricious because it was supported by a "reasoned explanation" that was amply supported by the evidence. *Williams*, 227 F.3d at 712.

Plaintiff's contention that Defendant gave too much weight to Dr. Zeller's independent medical examination is also without merit. While Defendant did rely on Dr. Zeller's examination in both its first and second denial of Plaintiff's appeal (AR at 411, 434), there is no indication that this examination was given greater weight than other evidence. On two

---

[4]The only evidence arguably supporting Plaintiff's claim is Dr. Bashir's conclusory recommendation in May 2003 that Plaintiff stop working. (AR at 61). This conclusion, however, is not supported by any objective evidence.

occasions Plaintiff was able to supplement her medical record with additional information (AR at 180, 368-405). Defendant received and evaluated all the information and records submitted on Plaintiff's behalf, including Dr. Zeller's report, and reasonably concluded that Plaintiff was not totally disabled. Moreover, it also bears mentioning that Dr. Zeller's report is based upon objective findings from his clinical evaluation of Plaintiff and is consistent with the other evidence in the record. (AR at 373-81). There is no indication that Defendant gave too much weight to Dr. Zeller's report.

Finally, Plaintiff briefly contends that a conflict of interest exists because Defendant has the discretion to determine her eligibility for benefits that are payable by it. While this inherent conflict of interest is a factor to be considered in the Court's analysis, *see Univ. Hosp. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 846 (6th Cir. 2000), there is no evidence to show that a conflict of interest played any part in the denial of benefits in this case. *See Kalish v. Liberty Mut./Liberty Life Assurance Co. of Boston*, 419 F.3d 501 (6th Cir. 2005) (finding that plaintiff's conclusory allegations were insufficient to show bias by the reviewing physician retained by the disability insurer). Thus, the mere possibility of a conflict of interest, without more, does not alter the conclusion that Defendant's determination was rational, was based on the evidence, and, thus was not arbitrary or capricious.

Defendant's decision to deny Plaintiff long-term disability benefits was not arbitrary and capricious because the record supports Defendant's determination that the medical

records did not support a finding of total disability.  Accordingly, Plaintiff's motion for judgment on the administrative record is denied.  Upon review of the administrative record, the Court affirms Defendant's decision to deny Plaintiff long-term disability benefits.  An order consistent with this opinion will be entered.


Date:     January 30, 2006             /s/ Robert Holmes Bell
                                                                       ROBERT HOLMES BELL
                                                                       CHIEF UNITED STATES DISTRICT JUDGE